UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAV NIKOLLBIBAJ and GEOFF DE WEAVER, | |
| Plaintiffs, | No. 21 C 6914 |
| v. | Judge Thomas M. Durkin |
| US FOODS, INC.; PIETRO SATRIANO; and STEPHEN C. ROBINSON, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Jav Nikollbibaj and Geoff De Weaver allege breach of contract and related claims against US Foods, its CEO, and one of its managers. Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 20. That motion is denied in part and granted in part.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

Nikollbibaj is a successful chef in Michigan who purchased products and supplies from US Foods for his businesses. A US Foods regional manager, Mark Minnick, told Nikollbibaj that US Foods was suffering from a shortage of "disposables," like plastic trashcan liners and latex gloves, which are products that US Foods resells to its customers. Nikollbibaj told Minnick that he could find less expensive suppliers of disposables for US Foods. Minnick gave Nikollbibaj information about US Foods's needs and budget, and Nikollbibaj began to communicate "with different vendors around the world" to find a less expensive supply for US Foods. *See* R. 18 ¶ 3.

Minnick then introduced Nikollbibaj to defendant Stephen Robinson, another US Foods manager. Robinson reiterated US Foods's interest in less expensive

disposables and told Nikollbibaj "that if he was able to reduce the gross purchase price paid by US Foods for gloves and liners US Foods would purchase the products from [Nikollbibaj] and pay him the difference between the original cost and reduced price." *Id.* ¶ 4.

At this point, Nikollbibaj enlisted Plaintiff De Weaver, a sales and marketing expert, to assist him with finalizing a proposal for US Foods. They allege that they were "ultimately successful in reducing the costs of the gloves and liners," and that the work "was highly labor intensive" and they "incurred substantial cost and expense on the project." *Id.* ¶ 5. Plaintiffs allege that they "expected to earn a fee from the sales of gloves and liners to US Foods of at least $6 per case for gloves and $15 per case for liners for a two-year period." *Id.*

Robinson asked Plaintiffs to provide sample products. After reviewing the samples, Robinson invited Plaintiffs to bring the samples to a meeting with US Foods CEO, defendant Pietro Satriano. Plaintiffs visited the US Foods headquarters believing they had a meeting with Satriano, but Satriano did not meet with them. His assistant asked Plaintiffs to leave the samples with her. *See id.* ¶ 18.

So far, all of the alleged communications are alleged to have been verbal. At this point, Plaintiffs allege they began to send emails to and receive written communications from US Foods employees. None of these documents are attached to the complaint. Plaintiffs included select quotations in the complaint, some of which the Court has reproduced in the course of the following narrative.

3

After Plaintiffs attempted to meet with Satriano, De Weaver followed up with an email to him emphasizing that their supplies would "achieve US Foods a minimum of 25% plus costs savings." *Id.* ¶ 19. Nikollbibaj followed up with emails, texts, and phone calls to Satirano's assistant Caete Young. She assured Nikollbibaj that "Satriano was fully informed of the business arrangement that Robinson had agreed to." *Id.* ¶ 19. At her request, Nikollbibaj provided Young with the "specific details" of the supplier summaries "so that she could connect [Nikollbibaj] with the right people within the organization." *Id.* Young told Nikollbibaj that he should follow up with the Senior Vice Present of Customer Strategy, Jim Osborne. *Id.*

On December 23, 2019, Nikollbibaj emailed Satriano expressing interest in moving forward with the deal. *Id.* ¶ 20. When Nikollbibaj called Osborne as Young instructed, Osborne yelled at Nikollbibaj that he was "making too much noise on the corporate end" and that Osborne was not interested in pursuing the deal. *Id.* ¶ 21. Osborne questioned Robinson's authority to make a deal, and according to Nikollbabaj, after Osborne calmed down, he "apologized for US Foods misleading" Nikollbibaj. *Id.*

On January 29, 2020, Nikollbibaj received a "cease and desist" letter from US Foods, which Plaintiffs allege "completely reneged on its promises, repudiated the contract to purchase gloves and liners" and "refused to pay [Plantiffs] the reasonable value of the services they performed." *Id.* ¶ 23. Nikollbibaj replied with an email reiterating he had been asked by "Pietro and your team to help reduce costs for [gloves and liners]." *Id.* ¶ 24.

4

At this point, Plaintiffs allege that US Foods stopped communicating with them. *Id.* ¶ 6. They allege that US Foods took the supplier information and bought gloves and liners directly from the suppliers instead of paying Plaintiffs to be middlemen. *Id.* Plaintiffs allege they lost income and profits of $500 million. They also allege unjust enrichment against US Foods for the value of their services in compiling list of suppliers in the amount of $10 million.

The complaint contains eight counts: (I) fraud in the inducement; (II) actual fraud; (III) constructive fraud/negligent misrepresentation; (IV) consumer fraud; (VI) breach of contract; (VII) promissory estoppel; and (VIII) unjust enrichment/quantum meruit. (Plaintiffs voluntarily dismissed Count V for conversion. *See* R. 22 at 15.)

## Analysis

Defendants make two primary arguments. First, Plaintiffs' fraud claims (Counts I, II, III, and IV) should be dismissed because their claims sound in contract. And second, Plaintiffs' contract claims (Counts VI and VII) should be dismissed because they violate the statute of frauds.

### I. Fraud Claims

Fraud is a tort. *See GEA Grp. AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 419 (7th Cir. 2014). "Generally, a party may not recover in tort for what is essentially a breach of contract." *Johnson v. George J. Ball, Inc.*, 248 Ill. App. 3d 859, 867–68 (1993) (citing *Masters v. Central Illinois Electric & Gas Co.*, 129 N.E.2d 586 (Ill. App. Ct. 2d Dist. 1955)). "In cases where the facts supporting the tort and contract

5

claims are identical and the losses sought for both claims revolve around recovery of the expected benefit of the bargain, the claims sound only in contract." *Kronos Prods., Inc. v. Sasib Bakery North America, Inc.*, 2002 WL 1308637, at *4 (N.D. Ill. June 14, 2002); *see also Bruger v. Olero, Inc.*, 434 F. Supp. 3d 647, 657 (N.D. Ill. 2020) ("[U]nder Illinois law a party may not recover in tort for a claim . . . that sounds in breach of contract."); *Tsybikov v. Dovgal*, 2019 WL 5208869, at *3 (N.D. Ill. Oct. 16, 2019) ("Under Illinois law a party may not recover in tort what is essentially a breach of contract.").

More to the point, a failure to satisfy a promise to do something in the future—which is the essence of a contractual agreement—is not fraudulent as a matter of law. Rather, to state a claim for fraud, "the alleged misrepresentations must be statements of present or preexisting facts, not statements of future intent or conduct." *Ault v. C.C. Servs., Inc.*, 597 N.E.2d 720, 722 (Ill. App. Ct. 1992); *see also Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005) ("A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act."); *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899 (7th Cir. 2006) (affirming the district court's finding that the plaintiff's claim was one for breach of contract and dismissing plaintiff's claim under the Illinois Consumer Fraud Act despite the plaintiff's failure to allege a breach of contract claim).

Here, Plaintiffs allege that Defendants did not hold up their end of the bargain. To the extent Plaintiffs allege Defendants lied, it was about their intent to buy gloves and liners from Plaintiffs or pay for Plaintiffs' services in procuring

6

suppliers. That kind of lie or misrepresentation is not actionable as fraud or any other tort. For this reason, Counts I, II, III, and IV are dismissed.

## II. Contract

Defendants cite two provisions of Illinois law requiring a writing for a contract to be enforceable. First, the Illinois Uniform Commercial Code provides that "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker." 810 ILCS 5/2-201. Second, the Illinois statute of frauds requires contracts that cannot be performed "within the space of one year . . . shall be in writing, and signed by the party to be charged therewith." 740 ILCS 80/1.

Plaintiffs allege that the agreement at issue was "for a two-year period." R. 18 ¶ 5. It also appears that the agreement was for the sale of goods, because Plaintiffs allege that they "expected to earn a fee from the sales of gloves and liners to US Foods." *Id*. Plaintiffs argue that the agreement was actually for their services in procuring suppliers. The Court is skeptical of this argument considering the allegation just referenced, and that Plaintiffs seek damages for lost profits.

In any event, if a writing is required to enforce the agreement alleged here, dismissal at this point in the proceedings is not appropriate. First, the statute of frauds "does not require that the contract itself be in writing, only that there be adequate documentary evidence of its existence and essential terms." *Cloud Corp. v.*

7

*Hasbro, Inc.*, 314 F.3d 289, 295 (7th Cir. 2002). Additionally, the statute of frauds is an affirmative defense, meaning that dismissal at the pleading stage is only appropriate if the complaint "sets forth everything necessary to satisfy the affirmative defense," *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005), such that the plaintiff has "affirmatively plead himself out of court," *Chicago Building Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014).

Plaintiffs do not allege that the agreement was embodied in a written contract. But they allege they had email communications with the Defendants about their alleged agreement. It is possible that these emails set forth the terms of the agreement. No allegation in the complaint makes it impossible that any of the emails or letters mentioned in the complaint embody the agreement, whether alone or in combination. *See Dargo v. Clear Channel Commc'ns, Inc.*, 2008 WL 2225812, at *2 (N.D. Ill. May 28, 2008) (denying a motion to dismiss because the plaintiff had not "pleaded any facts which clearly indicate that no document memorializing the oral agreement existed").

Defendants argue that speculation that a writing "theoretically could exist" is insufficient to avoid dismissal. *See* R. 23 at 5-6. They posit that if "this were the law, then no claim could be dismissed under the statute of frauds, as it is not possible for a defendant to *prove* the absence of such a writing." *Id.* at 6 (emphasis added). But that is precisely the point. The standard is not what the defendant can prove, but what the plaintiff has alleged. And contrary to Defendants' contention that under this standard it would be impossible to dismiss a claim for failure to comply with

8

the statute of frauds, it is certainly possible for a plaintiff to allege that the agreement *is not* in writing. A plaintiff could do so expressly, or by alleging circumstances that would make the existence of a writing impossible. Plaintiffs here have made no such allegation. Rather, the complaint indicates that the parties communicated by email about their interactions. It is possible that the contents of one or more of those emails might satisfy the writing requirement. Defendants also argue that if "such a writing existed, Plaintiffs would have it." *Id.* at 5. Perhaps that's true. But Plaintiffs are under no obligation to produce it at this stage of the proceedings, or even to reference it in their complaint. That's what discovery is for.[1]

## Conclusion

Therefore, Defendants' motion to dismiss [20] is granted in part and denied in part. Counts I, II, III, IV, and V are dismissed. Counts VI, VII, and VIII will proceed. (Defendants' earlier motion to dismiss the original complaint [15] is denied as moot.)

ENTERED:

*Thomas M. Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: November 9, 2022

---

[1] The promissory estoppel and unjust enrichment claims will likely rise or fall with the breach of contract claim, so there is no need to dismiss them now.